| | |
|---|---|
| **DUSTIN BLAIR HENRY,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.     BACKGROUND**

On February 13, 2020, Petitioner was charged in a Bill of Information with one count of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One); one count of distribution and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Two); and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Three). [CR Doc. 14: Bill of Information]. The same day, Petitioner agreed to plead guilty to these three counts in exchange for certain charging concessions by the Government, including foregoing a charge under 18 U.S.C. § 924(c), and the Government

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:23-cv-00559-FDW, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:20-cr-00038-FDW-DSC-1.

filed the factual basis. [CR Doc. 16 at ¶¶ 1-2: Plea Agreement]. Pursuant to the terms of the plea agreement, the parties agreed that more than 5,000 but less than 15,000 grams of methamphetamine were reasonably foreseeable to Petitioner, resulting in a base offense level of 34. [Id. at ¶ 8(a)]. Petitioner stipulated that there was a factual basis for his guilty plea. [Id. at ¶ 11]. The parties reserved the ability to argue specific offense characteristics, enhancements, and departures and variances from the applicable guidelines range. [Id. at ¶ 8(d)]. The Government agreed not to oppose a sentence at the bottom end of the applicable guidelines range determined by the District Court "[b]ecause the Defendant is entering a pre-indictment plea of guilty." [Id. at ¶ 8(e)]. Petitioner agreed that the factual basis did "not necessarily represent all conduct relevant to sentencing" and that the U.S. Probation Office may submit a statement of relevant conduct. [Id. at ¶ 12]. Petitioner waived his right to challenge his conviction or sentence through a direct appeal or post-conviction action, except for claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at ¶ 17].

On February 26, 2020, Petitioner waived indictment and a magistrate judge conducted his initial appearance and a Rule 11 colloquy. [CR Doc. 17: Waiver of Indictment; CR Doc. 18: Entry and Acceptance of Guilty Plea]. At the hearing, the magistrate judge confirmed that Attorney David Brown, who was there with Petitioner, had been appointed to represent the Petitioner. [CR Doc. 62 at 7: Plea Tr.]. Petitioner testified that he was "satisfied with Mr. Brown's services … so far" and that he "wish[ed] for him to continue as [Petitioner's] lawyer." [Id.]. Petitioner affirmed that he wanted to waive his right to indictment and proceed on the Bill of Information. [Id. at 8]. The magistrate judge reviewed all three charges, including the maximum penalties for each. [Id. at 3-6, 11-12]. Petitioner testified that he had spoken with his attorney about the charges and understood them and the maximum penalties that could apply to those charges. [Id. at 6, 13, 16].

2

Petitioner testified that he wanted the Court to accept his guilty plea to Counts One, Two, and Three of the Bill of Information. [Id. at 10]. Petitioner testified that he had spoken to his attorney about how the U.S. Sentencing Guidelines might apply to his case and that he understood that the District Judge would not be able to determine his sentence until a presentence report was prepared. [Id. at 13-14]. Petitioner testified that he understood that his sentence may be higher or lower than that called for by the guidelines. [Id. at 14]. Petitioner testified that he understood that, if the sentence is more severe that he expects or the Court does not accept the Government's recommendation, he will still be bound by the plea and would have no right to withdraw it. [Id.]. Petitioner testified that he was in fact guilty of the charges he was pleading guilty to. [Id. at 16]. The Government then reviewed the terms of the plea agreement in detail. [Id. at 16-18]. Among other things, the Government discussed the parties' agreement to jointly recommend that more than 5,000 grams but less than 15,000 grams of methamphetamine were reasonably foreseeable to Petitioner. [Id. at 17]. The Government discussed the parties' agreement that either may argue their respective positions on specific offense characteristics, cross-references, special instructions, enhancements, and adjustments, as well as departures or variances from the applicable guideline range determined by the Court at sentencing. [Id.]. The Government noted that, because Petitioner was entering into a pre-indictment guilty plea, it would not oppose a sentence at the bottom end of the applicable guidelines range determined by the Court at sentencing. [Id.]. The Government noted that Petitioner was aware of his limited rights to withdraw a plea of guilty, had discussed these rights with his attorney, and "knowingly and voluntarily waive[d] any right to withdraw his plea once the magistrate judge has accepted it." [Id.]. The Government noted that Petitioner had waived all rights to contest his conviction and sentence in any appeal or post-conviction action except for claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at 18].

Finally, the Government noted the section "on assistance to the Government wherein [Petitioner] agree[d] to cooperate should the United States so request." [Id.].

Petitioner testified that he understood the terms of the plea agreement and agreed to those terms. [Id. at 19]. Petitioner also affirmed that he understood he was waiving his right to appeal and to challenge his conviction and/or sentence in a post-conviction proceeding. [Id. at 19]. Petitioner affirmed that he had read, understood, and agreed with the factual basis. [Id. at 20]. Petitioner testified that no one had "threatened, intimidated, or forced [him] to enter [his] guilty plea today" and that no one made him any promises of leniency or a light sentence to get him to plead guilty." [Id.]. Petitioner testified that he was satisfied with the services of his lawyer and that the services "were good." [Id. at 21]. Finally, Petitioner's attorney, Brown, affirmed that he had reviewed the case with Petitioner, particularly the terms of the plea agreement, and that he, Brown, was satisfied that Petitioner understood its terms "and knows what he's doing." [Id.]. After finding that Petitioner's plea was knowingly and voluntarily made, the magistrate judge accepted it. [Id. at 22; CR Doc. 18 at 4: Acceptance and Entry of Guilty Plea].

Before sentencing, a probation officer prepared a Presentence Investigation Report (PSR). [CR Doc. 23: PSR]. On Counts One and Two, the probation officer recommended a base offense level of 34 based on Petitioner's responsibility for at least 5,000 grams but less than 15,000 grams of methamphetamine. [Id. at ¶ 19 (citing U.S.S.G. §2D1.1(a)(5))]. The probation officer recommended a two-level firearm enhancement and a two-level enhancement for making a credible threat of violence during a drug transaction,[2] yielding an adjusted offense level of 38. [Id. at ¶¶ 20-21 (citing U.S.S.G. §§ 2D1.1(b)(1), 2K2.1(b)(2))]. After cross-reference under

---

[2] The Statement of Relevant Conduct provided that Petitioner, along with co-conspirator Lawrence Brooks, robbed a man and a woman at gunpoint during a one-kilogram methamphetamine transaction at a hotel in Gaston County, North Carolina, in February 2019. [CR Doc. 26 at ¶ 11].

4

§2K2.1(c)(1)(A), the adjusted offense level for the three counts was 38. [Id. at ¶ 29]. After a three-level reduction for acceptance of responsibility, the total offense level was 35. [Id. at ¶¶ 35-37]. With a criminal history category of IV, the guidelines yielded a sentencing range of 235 to 293 months' imprisonment. [Id. at ¶¶ 54, 89]. Petitioner objected to the two-level credible-threat-of-violence enhancement, arguing that his having the weapon in his waistband and moving his shirt to show it to the female victim during a drug transaction was not a credible threat of violence. [CR Docs. 25, 38].

On May 20, 2021, Petitioner filed a pro se letter with the Court seeking new counsel and to withdraw his guilty plea. [CR Doc. 28]. In this letter, Petitioner voiced numerous issues with his attorney and the proceedings. [See id.]. He claimed that he was "under duress and felt pressured into" pleading guilty; that he unsuccessfully tried to contact and have his family contact his attorney within the 14-day grace period to withdraw his plea; that the drug amount he agreed to, 0 to 500 grams, changed to 5,000 to 15,000 grams at the time he signed the plea agreement; that Attorney Brown told him his criminal history category was III and his offense level 32, but these changed "after getting [his] PSR back" to IV and 34, respectively; that Brown failed to explain what an appeal was or the appeal process; that Brown failed to explain the plea agreement "to where [Petitioner] understood it" and Petitioner did not know what he was signing; that there was a conflict of interest because Brown and Assistant United States Attorney (AUSA) Kaufman, the prosecutor, were "really close friends" and Brown had been Kaufman's boss; and that communication with Brown was an "ongoing issue" throughout the representation. [Id. at 1-2]. Petitioner asked for a new attorney and to withdraw his plea agreement. [Id. at 3]. The Court deferred ruling on Petitioner's motions until they were properly submitted by Petitioner's counsel of record. [5/21/2021 Text order].

On June 17, 2021, Petitioner filed a counseled motion for inquiry of status of counsel. [CR Doc. 29]. In this motion, Petitioner's attorney painted a very different picture. [See id.]. Attorney Brown reported that he and Petitioner discussed the anticipated guidelines range and that Brown advised him that, until the PSR was prepared, Brown's opinion "was a prediction, not a promise." [Id. at 2]. Brown specifically advised Petitioner that, "the Guideline range could be different from and, in fact higher, than anticipated by Counsel." [Id.]. Petitioner acknowledged that he understood these facts and "specifically stated that he understood the terms and conditions of the proposed plea agreement and was aware that his full, complete, and truthful cooperation with the Government was necessary to achieve the lowest possible sentence." [Id.]. Brown explained to Petitioner the procedures for Petitioner's initial appearance on the Bill of Information, "the meaning and purpose of the waiver of the right to an indictment," and the questions the Court would ask Petitioner before accepting his guilty plea. [Id.]. Brown went over every question the Court would ask before accepting Petitioner's plea to ensure that he understood them and to determine what Petitioner's answers would be in advance. [Id.]. Petitioner agreed with the factual basis supplied by the Government, and, in Brown's view, the factual basis was "amply supported" by the discovery made available to Brown before he discussed the proposed plea agreement with Petitioner. [Id.]. On February 17, 2020, three days after the Bill of Information, plea agreement, and factual basis were filed, Brown met with Petitioner to prepare him for a debriefing by the Government, which occurred the next day. [Id.]. Brown later explained to Petitioner that, if he were to testify at any trial of his codefendants, "he stood to gain an even larger reduction based on substantial assistance." [Id. at 3]. Contrary to Petitioner's claims, Brown reported that he had found no evidence that Petitioner or any of his family members had attempted to contact him during the time period for filing an objection to the magistrate judge's determination that his plea

was knowing and voluntary. [Id. at 3 n.1]. Brown met with Petitioner on February 27, 2020, to begin preparing the mandatory sentencing documents. [Id. at 3]. Petitioner did not direct Brown to move to withdraw the guilty plea at this meeting or any other time before filing his pro se letter seeking to withdraw his guilty plea. [See id. at 3 n.1, 4]. On March 19, 2020, Brown attended Petitioner's presentence interview with the probation officer. At this meeting, Petitioner gave no indication of wanting to withdraw his plea. [Id. at 4]. On April 16, 2020, Brown met with Petitioner to thoroughly review the draft presentence report with him. Petitioner "was not happy with the proposed Guidelines range," but Brown attempted to reassure Petitioner that the range would not likely be his sentence if he "continued to provide truthful and valuable assistance to the Government." [Id.]. On April 30, 2020, Brown filed an objection to the proposed two-level enhancement for "making a credible threat of violence" in connection with the offense of conviction. [Id.]. As noted, the probation officer rejected the objection in the final PSR. [Id. at 4-5; see CR Doc. 26 at 23-4: PSR Addendum].

Brown further provided that, in an October 22, 2020 meeting with Petitioner, Brown advised him that one or more of his codefendants would be proceeding to trial and the Government would likely want to meet with him again to prepare for his trial testimony. [Id. at 5]. Petitioner expressed reluctance to providing any further assistance, but finally agreed he would at least meet with the Government and then make his decision about testifying. [Id.]. On April 7, 2021, Brown met with Petitioner to prepare him for an anticipated meeting with the Government, fully expecting that Petitioner could earn a larger departure motion based on substantial assistance. Petitioner was again reluctant to provide any further cooperation and "adamantly insisted that he would not testify at any trial." [Id.]. Brown convinced him to withhold that decision until after he met with the Government. On April 14, 2021, Brown participated in the Government's meeting with Petitioner

by phone. [Id.]. After the meeting, Petitioner notified Brown that he had decided not to testify at the upcoming trial. Brown met with Petitioner "to dissuade him from this position but to no avail." Brown spoke with Petitioner several more times to persuade him to testify, but Petitioner refused to change his mind. [Id.]. On April 28, 2021, the Court set Petitioner's case for sentencing on June 24, 2021, and, on May 20, 2021, Petitioner filed his pro se letter seeking to withdraw his guilty plea and for appointment of new counsel. [Id.]. As for Petitioner's claim of a conflict of interest because of Brown's relationship with AUSA Kaufman, Brown "let his professional reputation with the Court speak for itself and [did] not respond to [Petitioner's] baseless allegations of improper allegiance to the prosecutor." [Id. at 6].

On June 25, 2021, after a hearing, the magistrate judge granted Petitioner's motion for inquiry of counsel, removed Brown as Petitioner's attorney, and ordered that new counsel be appointed. [6/25/2021 Minute & Oral Orders]. Denzil Forrester was appointed as Plaintiff's new attorney. On December 17, 2021, Petitioner filed a counseled motion to withdraw guilty plea. [CR Doc. 32]. On March 2, 2022, after a hearing on this motion, Petitioner decided to withdraw his motion to withdraw his guilty plea and maintained his guilt. [CR Doc. 58 at 1-25; see 3/2/2022 Minute Entry]. The Court granted the parties' joint motion for a continuance of the sentencing hearing. [See id. at 25].

On July 25, 2022, Attorney Forrester moved to withdraw as Petitioner's attorney. [CR Doc. 41]. In this motion, Forrester stated that Petitioner was refusing to communicate with him and demanded that the undersigned withdraw from further representation. [Id. at 1-2]. Forrester relayed that he "lack[ed] faith in the contradictory assertions of his client" and that they were "at an impasse." [Id. at 2]. On July 28, 2022, the Court held a hearing on Forrester's motion.[3] [CR

---

[3] Petitioner was not present at this hearing because, according to the Mecklenburg County Sheriff's Officer, Petitioner was in isolation. [CR Doc. 59 at 2].

Doc. 59: Hearing Tr.].  The Court denied Forrester's motion to withdraw.  [CR Doc. 59 at 2-12: Hearing Tr.].  Petitioner's sentencing was set for September 29, 2022.  On September 23, 2022, Attorney Forrester filed a second motion to withdraw as counsel, advising the Court that he had made a good-faith attempt to mend the attorney-client relationship, which had failed.  [CR Doc. 44].  Then, after Forrester met with Petitioner at the jail and Petitioner decided to go forward with sentencing "as opposed to any other issues that he has raised," Forrester withdrew the pending motion to withdraw, and the matter proceeded to sentencing.  [See 9/29/2022 Oral Motion & Order; CR Doc. 57 at 2-4].

      The Court accepted the probation officer's sentencing recommendation, finding a total offense level of 35, which included a base offense level of 34 corresponding to a drug weight of 1,500 to 15,000 grams of methamphetamine, two two-level enhancements for firearms and the credible threat of violence, and a three-level reduction for acceptance of responsibility.  [See CR Doc. 47 at 1: Statement of Reasons].  Petitioner was sentenced at the bottom end of the guidelines range to terms of imprisonment of 235 months on Counts One and Two and a term of 120 months on Count Three, all to run concurrently for a total term of imprisonment of 235 months.  [CR Doc. 46 at 2: Judgment].  Judgment on Petitioner's conviction was entered on September 30, 2022.  [Id.].  Petitioner appealed.  [CR Docs. 48, 53].  On appeal, Petitioner's counsel filed an Anders brief, conceding there were no meritorious issues for appeal but questioning whether Petitioner's plea was coerced and whether this Court erred in relying on uncharged conduct in enhancing Petitioner's sentence under the guidelines.  United States v. Henry, No. 22-4573, 2023 WL 364 5081, at *1 (4th Cir. May 25, 2023).  The Fourth Circuit found that, "[t]he record demonstrates that [Petitioner's] dissatisfaction with his plea resulted not from coercion, but from his displeasure with his Guidelines range and counsel's refusal to take steps that were not factually or legally

9

supported." Id. Moreover, "[t]he two Guidelines enhancements that counsel questions were based on conduct that [Petitioner] admitted in a statement to law enforcement, and thus the district court did not err in applying the enhancements." Id. at *2.

On August 28, 2023, Petitioner timely filed the pending motion to vacate. [CV Docs. 1, 1-1; see id. at 12]. Petitioner argues that he received ineffective assistance of counsel because (1) his attorney failed "to provide documents as required by law;" specifically, he "was never shown his motion to discovery nor was he given the chance to see any and all evidence … against him;" (2) both attorneys failed to challenge or object to the amount of methamphetamine the Government said Petitioner is responsible for "before and during PSI interview and during sentencing," and (3) there were multiple conflicts of interest between Petitioner and both attorneys and the prosecutor. [Doc. 1-2 at 8]. Petitioner also claims that his guilty plea was not knowing and voluntary. Petitioner alleges that, his handwritten letter to this Court, he had claimed that his plea was coerced and that he was "under duress and felt pressured" into pleading guilty and that the plea agreement he was given to sign "differed significantly from what he had authorized." [Id. at 5]. Petitioner further alleges that his letter claimed that his attorney "failed to advise and/or explain critical portions and implications of the plea agreement to him, including that he would be ineligible for certain benefits and programs in prison and the significance of his appeal waiver." [Id. at 5-6]. Petitioner also claims that the Court violated his Fifth and Sixth Amendments rights by enhancing his sentence based on uncharged conduct that was not found by a jury. [Id. at 6-8]. Finally, Petitioner purports to assert a claim for prosecutorial misconduct because he "was never indicted and Bill of Information was filed 13 days prior to ever having waived [his right] to Indictment."[4] [Id. at 2-3, 8].

---

[4] Petitioner lists other complaints regarding his representation and other aspects of the criminal proceeding. [See Doc. 1-2 at 2-4]. While it is unclear whether Petitioner intends to state claims for relief under § 2255

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

Under 28 U.S.C. § 2255, a petitioner is entitled to relief when his original sentence "was imposed in violation of the Constitution or laws of the United States, or [when] the court was without jurisdiction to impose such sentence, … or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Under the Rules Governing Section 2255 Proceedings for the United States District Courts, an applicant for relief under § 2255 must "specify all the grounds for relief available" and "state the facts supporting each ground." Rule 2(b)(1)-(2).

### A. Knowing and Voluntary Guilty Plea

Pointing to various statements he made in his pro se letter, Petitioner claims that his guilty plea was not knowing and voluntary and that he was coerced into pleading guilty. The Court will deny this claim. After reviewing the record in this matter, the Fourth Circuit concluded that Petitioner's dissatisfaction with his plea "resulted not from coercion, but from his displeasure with his Guidelines range and counsel's refusal to take steps that were not factually or legally supported." Henry, 2023 WL 3645081, at *1. This Court agrees. The record shows that the

---

based on these allegations because he does include them in his list of issues he "asks the Court to consider," [see id. at 4], the Court notes that it has considered them, and they do not entitle Petitioner to any relief here.

11

magistrate judge properly conducted a Rule 11 colloquy in this matter and appropriately accepted Petitioner's guilty plea.  Moreover, even after having been given ample opportunity to address his issues with his guilty plea, Petitioner opted to withdraw his motion to withdraw his guilty plea and to proceed with sentencing. The Court will deny Petitioner's claim that his guilty plea was not knowing and voluntary.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy."  United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010).  Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea.  See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983).  A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Petitioner argues that he received ineffective assistance of counsel because (1) his attorney failed "to provide documents as required by law," (2) both attorneys failed to challenge or object to the amount of methamphetamine the Government said Petitioner is responsible for "before and

13

during PSI interview and during sentencing," and (3) there were multiple conflicts of interest between Petitioner and both attorneys and the prosecutor. These claims all fail. Petitioner's contention that his attorney failed to show him his "motion to discovery" or "any and all evidence against him" is too vague and conclusory to be considered. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). The Court will dismiss this claim.

Petitioner claims that his attorneys were ineffective for failing to challenge the drug amount. Petitioner alleges that he only "admitted and agreed to selling … 1.5 kg-5kg," not "15kg-45kg," which was "the amount determined" and yielded a base offense level of 34. [CV Doc. 1-2 at 4]. This argument plainly fails. Petitioner agreed in his plea agreement to being responsible for 5,000 to 15,000 grams of methamphetamine, [CR Doc. 16 at ¶ 8(a)], and the Court sentenced Petitioner based on this amount, [see CR Doc. 23 at ¶ 19]. Moreover, a drug weight of "15kg-45kg" carries a base offense level of 36, not 34. U.S.S.G. §2D1.1(c)(2). If Petitioner's attorney had challenged the drug weight on which the plea agreement was based, he risked undermining and losing the entire agreement. [See CR Doc. 16 at ¶¶ 3-4]. As such, the Court will deny Petitioner's claim that his attorneys were ineffective for not challenging the drug amount.

Petitioner asserts that Attorney Brown "was biased against Petitioner from first day of representation," that Brown and AUSA Kaufman were friends, and that such relationship deprived Petitioner of "honest and fair representation and a chance at a proper defense." [CV Doc. 1-2 at 2]. Petitioner claims that Attorney Forrester had a conflict of interest because Forrester also represented Petitioner's codefendant, "Cockrell," while representing the Petitioner. [CV Doc. 1-2 at 3]. Petitioner also complains that a hearing on motion for inquiry of counsel was held without Petitioner's presence. [Id. at 2-3].

14

To establish ineffective assistance arising from a conflict of interest, a "petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) (quoting Cyler v. Sullivan, 446 U.S. 335, 348 (1980)). "An actual conflict of interest arises 'when a defense attorney places himself in a situation inherently conducive to divided loyalties … If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists.'" Whelchel v. Bazzle, 489 F.Supp.2d 523, 535 (D.S.C. Dec. 18, 2006) (quoting Duncan v. State, 315 S.E.2d 809, 811 (S.C. 1984)).

Petitioner has failed to satisfy either element relative to Attorneys Brown or Forrester. Petitioner's conclusory allegations do not establish that Attorney Brown's friendship with AUSA Kaufman constituted an actual conflict of interest, nor has Petitioner shown that it affected Brown's performance. Petitioner has also failed to make these showings relative to Attorney Forrester. While it appears from the Court's docket that Forrester represented Coleman Boyd Cockrell from February 25, 2021, through September 23, 2021 [see Criminal Case No. 3:19-cr-00360-FDW-DSC-1, 2/25/2021 Docket Entry & 9/23/2021 Text Order], Petitioner has not shown how this representation constituted an actual conflict of interest or that it negatively affected Forrester's performance as Petitioner's attorney. As such, Plaintiff has failed to establish ineffective assistance based on these alleged conflicts of interest.

As for prejudice on all his claims of ineffective assistance of counsel, Petitioner alleges only that "[t]he deficient performance of both attorney's [*sic*] rendered the result of Petitioner's fundamentally unfair." [CV Doc. 1-2 at 5]. Moreover, Petitioner does not seek a new trial, only that his judgment be vacated and that he be resentenced. [See CV Doc. 1 at 12]. Thus, Petitioner has not shown prejudice on any of his ineffective assistance claims. See Sexton, 163 F.3d at 882.

In sum, because Petitioner cannot show deficient performance or prejudice, his ineffective assistance claims will be dismissed. See Strickland, 466 U.S. at 687-88.

## C. Sentencing Enhancement by the Court

Petitioner also claims that the Court erred in applying the two-level credible-threat-of-violence sentencing enhancement. This claim will be dismissed for several reasons. A knowing and voluntary waiver of the right to pursue post-conviction relief is enforceable. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Petitioner waived the right to seek post-conviction relief, including under § 2255, in his plea agreement. While Petitioner maintains that his plea was coerced, such claim is plainly contradicted by the record in this matter, including Petitioner's sworn testimony at his plea hearing. As such, the Court will dismiss Petitioner's challenge to this enhancement as waived.

Moreover, the Fourth Circuit already determined that the two guidelines enhancements applied by the Court "were based on conduct that [Petitioner] admitted in a statement to law enforcement," and, therefore, this Court "did not err in applying the enhancements." Henry, 2023 WL 3645081, at *2. Petitioner may not circumvent that ruling here. United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam).

Furthermore, Petitioner's challenge is not cognizable on collateral review. "[N]ot every alleged sentencing error can be corrected on collateral review… [O]nly those errors presenting a 'fundamental defect which inherently results in a complete miscarriage of justice' are cognizable." United States v. Foote, 784 F.3d 931, 932 (4th Cir. 2015) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). Petitioner's claim here is not cognizable because he does not identify an error resulting in a fundamental defect. See United States v. Pregent, 190 F.3d 279, 283-84 (4th

16

Cir. 1999) ("[b]arring extraordinary circumstances, however, an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding"). In this regard, Petitioner claims that the enhancement violates his Fifth and Sixth Amendment rights because it was applied without a jury finding him guilty of the relevant conduct. [CV Doc. 1-2 at 6-8]. Such proof is not required where the enhancement does not increase the statutory maximum penalty to his offense. Apprendi v. New Jersey, 530 U.S 466, 490 (2000). The Court, therefore, also dismisses Petitioner's claim on this issue as not cognizable on collateral review.

Finally, even if Petitioner could challenge application of the credible-threat-of-violence enhancement on collateral review, it is without merit. As found by the Fourth Circuit, Petitioner's admission to law enforcement was sufficient to support the Court's application of this enhancement, as was the statement of relevant conduct provided in the PSR, [see CR Doc. 26 at ¶ 11]. As such, for these reasons, the Court will dismiss Petitioner's claim that the Court erred in applying the credible-threat-of-violence enhancement at sentencing.

### D. Prosecutorial Misconduct

Petitioner's claim of prosecutorial misconduct based on the Bill of Information having been filed 13 days before he waived indictment is wholly without merit. There is nothing improper about this occurrence, nor did it divest the Court of jurisdiction to hear the case. [See Doc. 1-2 at 8]. The Court will dismiss this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 motion to vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 15, 2023

Frank D. Whitney
United States District Judge